No. 2537

Second Circuit

---

JOHN M. COMEGYS v. SHREVEPORT KANDY KITCHEN

FRED MARTEL, Intervenor

---

(March 11, 1926. Opinion and Decree)
(April 10, 1926. Rehearing Refused)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Landlord and Tenant —Par. 32, 33.**

The law creates a presumption of a continuance of the lease only in case the landlord permits the tenant to occupy the premises for one week subsequent to the expiration of the old lease.

2. **Louisiana Digest—Chattel Mortgages— Par. 4.**

Under the provisions of Section 4 of Act 198 of 1918 the "Chattel Mortgage Law", a chattel mortgage is a lien superior in rank to any privilege or lien arising subsequently thereto.

3. **Louisiana Digest—Landlord and Tenant —Par. 111.**

Notwithstanding the provisions under Article 2689 of the Civil Code the chattel mortgage placed upon the property of the tenant during the existence of a lease will be superior to any privilege of the landlord for rent arising after the expiration of the lease even though

the property of the tenant is not moved from the leased premises.

4. **Louisiana Digest—Landlord and Tenant —Par. 32, 33, 111; Chattel Mortgages —Par. 4.**

The reconduction of a lease from month to month after expiration of the term of the lease creates a new landlord's lien which is primed by a chattel mortgage of the tenant during the existence of the lease.

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo, Hon. T. F. Bell, Judge.

Action by John M. Comegys against the Shreveport Kandy Kitchen. Fred Martel intervened. There was judgment for plaintiff and the intervenor appealed.

Judgment affirmed in part and reversed in part.

Dickson and Denny, of Shreveport, attorneys for plaintiff, appellee.

Herndon and Herndon, of Shreveport, attorneys for defendant, appellant.

ODOM, J.    The issues in this case were submitted upon an agreed statement of facts as follows:

"On February 27, 1924, the Shreveport Kandy Kitchen, Germaneous F. Eltife, owner, being indebted to Fred Martel, gave him a chattel mortgage on all of the fixtures of the candy kitchen located at 719 Texas street, Shreveport, Louisiana, for one thousand, one hundred and 00-100 ($1100.00) dollars, which was duly recorded, at which time the property mortgaged was in the premises leased from Comegys at a stipulated price of two hundred and twenty-five and 00-100 ($225.00) dollars per month, under lease which expired on the 1st of January, 1925, since which time it has been occupied from month to month. Martel having intervened in the suit claiming to be paid by preference out of the proceeds of the sale of the goods seized covered by his mortgage.

"The question presented to the court is, whether or not, the mortgaged property being in the leased premises at the time the mortgage was given and the lease having expired on January 1, 1925, Martel's chattel mortgage outranks the lessor's lien for rent accruing since the termination of the lease on January 1, 1925."

The district judge, in a written opinion, said:

"The sole question presented to the court is whether the lessor's lien prevails over the mortgage, or the mortgage over the lessor's lien.

"There is no doubt but that the lessor's lien primed the mortgage for any rent that might be due prior to January 1, 1925, for at the very moment the chattels were placed in the leased premises, the lessor's lien attached for all amounts that might be due under that particular lease.   See Youree vs. Limerick, 157 La. —, (39), 101 So. 864, dated January 3, 1925."

There can be no dissent from the proposition of law thus stated, for the jurisprudence on that point is settled.

But, our learned Brother of the district bench went further and held that—

"Under Article 2689, when two parties enter into a contract of lease for a definite term, they do so with a full realization (legally speaking) that the law writes into that very lease the provision that that very lease shall continue in force and effect, after the expiration of the term agreed on, for an indefinite time, saving to the parties the right to put an end to it on the expiration of any month.   This being true, then the very moment the chattels are placed in the leased premises under the term lease, the lessor's lien attached not only for the term specified in the lease but for an indefinite term thereafter.   And one taking a chattel mortgage on the property in the leased premises, during the existence of the term lease, is legally bound to know that the lessor's lien rested against the same property for whatever rent might become due in the future so long as the lessee remained in

the same premises without executing a new lease."

Stated in different language, what the district judge held was, that while it is true in the instant case that the conventional lease between the parties came to an end on December 31, 1924, yet when the lessee was permitted to continue his occupancy of the premises under a month to month lease, the full time of his possession under the reconduction for month to month lease was a continuation and extension of the old conventional lease and became part of it, and that as a matter of law there was no break in the old lease; and that therefore the lessor's lien primed the privilege resulting from the execution and recordation of the chattel mortgage, not only for all amounts which became due for rent to the end of the conventional lease but also for all amounts which became due thereafter while the lessor occupied the premises under the month to month lease.

We cannot assent to that holding.

The conventional lease expired at midnight on December 31, 1924, and at that moment all the right and privilege of the lessor under that lease expired also, except for the rent which became due under it.

One moment after the conventional lease expired there was no lease on the property and the landlord had no privilege on the property then in the leased premises, except for the payment of rent already accrued.

The lessee's occupation of the premises thereafter under reconduction constituted a new lease for each month. Whatever privileges the landlord had on the chattels in the premises for his rentals under the reconducted or new lease accrued subsequently to the expiration of the old lease.

But it is contended, and was so held by the district judge, that there was no break in the lease and that the old lease was continued by reconduction.

Article 2689 of the Civil Code provides:

"If the tenant either of a house or of a room should continue in possession for a week after his lease has expired, without any opposition being made thereto by the lessor, the lease shall be presumed to have been continued, and he cannot be compelled to deliver up the house or room without having received the legal notice or warning directed by Article 2686."

There is therefore no tacit reconduction of the lease unless the tenant is allowed to remain in the leased premises for one week after the termination of the lease. The law creates a presumption of a continuance of the lease only in case the landlord permits the tenant to occupy the premises for one week subsequent to the expiration of the old lease. It therefore follows that during the period of the week immediately following the expiration of the lease the landlord could have evicted the tenant without notice, for the Code provides that notice must be given only if the lease tenant remained a week, and the tenant could, during the same period of time, vacate the premises without notice.

There is no presumption of continuance of the lease unless the landlord permits the tenant to remain a week. During that week there is no tie, either conventional or legal, between the landlord and the tenant.

In the case of Johnson vs. Meyer, 36 La. Ann. 333, the court said:

"The evidence is uncontradicted that the lease expired on the 30th of September and the landlord's right to re-entry was absolute, unless he permitted the tenant to remain for a week without opposition, which he had not done."

In the case of Bowles vs. Lyon, 6 Rob. 262, the court said:

"When, therefore, the lease of a house for a given time expires, the landlord may, at any time within one week, expel the tenant without giving him any notice, and the tenant, in like manner, may quit the premises without notice to the landlord, but if the latter suffer him to hold over for a week, then the tenant holds for one month under Article 2655 (2684) at the previous rent and can only be expelled by the fifteen days' notice required by the following article of the Code; and he, on the other hand, can quit only on giving a similar notice to the landlord. Such appears to us to be the only effect of a tacit reconduction, under the articles of our code."

In the case at bar, the conventional lease expired on December 31, 1924. For a period of one week immediately thereafter there was no lease—the old one had expired and there was no presumption of a continuance under Article 2684 of the Code. There was therefore no tie, either legal or conventional, between the parties during this time.

During the pendency of the old lease the lessee granted a chattel mortgage on his property then in the leased premises. Under the law this property was subject to the lessor's privilege for all rent which might become due under the lease then in force and primed the privilege arising from the execution and recordation of the chattel mortgage. But, under the language of the statute (Act 198 of 1918, page 373, section 4) the lien in favor of the chattel mortgage shall be superior in rank to any privilege or lien arising subsequently thereto".

All rents due under the conventional lease were paid. The lessee was permitted to remain in the building by the lessor and he occupied it from month to month. The amount due the landlord in this case is for monthly rentals for the building for the months of March, April, May and June, 1925. These amounts became due more than two months after the old conventional lease had expired and the lessor's lien and privilege arose only when the amounts became due.

All the obligations of the lessee under the old conventional lease were satisfied by the payment of the rent by him. Thereafter the chattels of the lessee in the leased premises were released from the lessor's lien arising under the contract. At the end of that lease, on December 31, 1924, and upon the payment of all rentals due thereunder and the release of the property from the lessor's lien, the lien under the chattel mortgage immediately attached as the first privilege and primed the lessor's lien and privilege for rent which became due thereafter.

But it is contended, and the District Court so held, that the lessee's occupancy of the premises after the expiration of the old lease had the effect of continuing the conventional lease in full force and effect and that there was no break in the lease and that the lessor's privilege for the rentals accruing subsequently primed the lien of the chattel mortgagee.

We think the court erred in so holding.

The tenant continued to occupy the premises after the expiration of the lease without objection on the part of the landlord. There was, therefore, a tacit reconduction of the lease. This tacit reconduction created a new contract and a new obligation.

In the case of Goheebo vs. Stanby, 1 La. Ann. 17, the court held that a tacit reconduction of a lease is for only the current month and creates a new obligation.

In the case of Armstrong vs. Bach, 20 La. Ann. 190, the court held that where a

tenant continued to occupy the house after the expiration of the lease, there is a tacit reconduction of the lease by the month.

To the same effect, see:

Brown vs. Martin & Crenshaw, 9 La. Ann. 504.

Lafon vs. Dufrocq, 9 La. Ann. 352.

Murrell vs. Lion, 30 La. Ann. 255.

In Remedial Loan Society vs. Frederick Solis, et al., 1 La. App. 164, the Orleans Court of Appeal held that:

"Holding over after the expiration of each month creates a tacit reconduction from month to month and a new contract for each month."

And, in 12 Orleans App. 218, the same court held that every continuation is a new contract.

In the case of Bowles vs. Lyon, supra, and other cases cited, the lease under reconduction is spoken of as a new lease.

Under all the jurisprudence the continuance of a lease by reconduction is only from month to month and either party may put an end to it by giving fifteen days' notice.

Therefore, whatever contract was created between the parties by the law in this case expired at the end of each month after January 1, 1925.

The lessee paid the rent for January and February and $150.00 on the rent for the month of March, 1925. Upon the payment of the rent the property was free from the lien in favor of the lessor. The lien under the chattel mortgage became paramount and primed the privileges arising subsequently.

The District Court held that the lessor's privilege was superior to the lien in favor of the chattel mortgage, and ordered the lessor paid by preference. The judgment, to that extent, must be reversed. In all other respects, it is correct.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed in all respects and particulars, except as to the rank of the lien as between the lessor and the chattel mortgagee, and, as to that, it is ordered, adjudged and decreed that the lien under the chattel mortgage in favor of Fred Martel, the intervenor, be and it is hereby declared to be superior in rank and to prime the privilege for rent in favor of the plaintiff, John M. Comegys, and that the claim of the said chattel mortgagee be paid by preference and priority out of the proceeds of the sale of the property mortgaged.