LAND, J.
On January 20, 1913, Mrs. Eleanor M. Drouet, wife of P. C. Drouet, leased to plaintiff; certain lands described in said contract of lease for a period of five years commencing from January 1, 1913, and ending December 31, 1917, at an annual rental of $300 for the first year and. $350 for each succeeding year until the termination of the lease.
It was agreed between the parties that the plaintiff should have the right, at.any time during the pendency of said lease, .to purchase the lands leased,' and several small tracts not included in the lease, for the sum of $50 per acre, to be paid in cash at the *989 time of the execution of the deed, or upon such terms as the lessee should designate; provided that at least one-fourth of the total be paid in cash, and the balance be paid in annual installments extending over a period of not over three years after the date of said sale, said deferred payments to be evidenced by notes hearing 8 per cent, interest from date and secured by vendor’s lien and special mortgage upon the property so sold. It was agreed between the parties that this option to purchase should be personal to plaintiff, and he should not have the right, during the pendency of this lease, to transfer said option without the consent of the lessor.
This contract of lease and option was filed in the recorder’s office of Rapides parish, where this property is situated, on May 1, 1913, and recorded on May 16, 1913.
Mrs. Drouet, by act of sale of date January 14, 1915, and recorded January 15, 1915, sold the property leased to plaintiff along with other lands, to Harry W. Allen, and on May 23, 1916, Allen conveyed said property, along with other lands to the Home Place Land Company.
On September 18, 1917, plaintiff notified Mrs. Drouet in writing that he desired to execute said option and purchase said property at the price of $50 per acre cash.
On November 26, 1917, plaintiff, by authentic act duly recorded, accepted said option and promise of sale for the price of $50 per acre cash, and on December 7, 1917, • again wrote Mrs. Drouet, stating that he desired to make to her a legal tender in cash of the purchase price of said property, to be accepted by her, and requesting her to deliver to plaintiff an authentic act of sale, transferring to plaintiff title to said property, and requesting her to fix a date and place for said tender to be made. On December 18, 1917, Mrs Drouet replied to said letters, stating that” she was unable to make the transfer to plaintiff as requested, and that it would be impossible for her to do so in the event that a legal tender should be made, for the reason that, since the execution of said contract between her and the plaintiff, she had conveyed the property covered by said contract to one II. W. Allen of Chicago, 111.
On September IS, 1917, plaintiff notified in writing the said Harry IV. Allen, and on October 10, 1917, the said Home Place Land Company of his desire and purpose of exercising said option and purchasing said property, but neither complied with nor attempted to Comply with, plaintiff’s request.
The present suit was filed to compel specific performance of plaintiff’s option to purchase the property in question.
Plaintiff prays for judgment against the defendants, decreeing him to be the owner of said property, and, if necessary, for the execution of a formal deed transferring title to said property to plaintiff, and decreeing the title to said property in him, and the sales of said property to Allen and the Home Place Land Company to'be null, void, and of no effect, and canceling the inscription of same on the records of Rapides parish, subject to the payment of the purchase price by plaintiff to Mrs. Drouet, or, in the alternative, to the Home Place Land Company, or to whomsoever the court should determine to be entitled to said purchase price, and upon the execution, if necessary, of a formal transfer by the successor in the reputed title of Mrs.,Drouet.
Defendants filed an exception of no cause of action to plaintiff’s petition. The lower judge overruled this exception, and, as the defendants and appellees have failed to discuss this exception in their briefs, we- presume that they have abandoned same.
The defendant the Home Place Land Company in its answer, avers the validity of the *991 sales from Mrs. Drouet to Allen, and from liim to defendant company.
Defendant company avers that there was no consideration given for the alleged promise of sale from Mrs. Drouet to plaintiff, and that the same is of no effect on account of failure of consideration thereforand, in the alternative, defendant avers that such right was forfeited and abandoned by plaintiff, both by his refusal to accept title at a time when he requested same made to him, and later by his verbal declarations and notice to ' defendant company and others that he had waived and abandoned and would not exercise same, and also by his removal from the property and abandonment of possession thereof; and, in the alternative, defendant company avers that a cause of action for specific performance under the alleged option can be maintained only against the- defendant company; that a condition precedent to the institution of such an action is a tender to the respondent as the record owner of said property; that no such tender has been made, or attempted to be made, to defendant company, and that this action is premature for said reason.
■ Defendant company avers that in the contract of lease and option of date January 20, 1913, said option was personal to J. M. Kinberger, the plaintiff, and that same could not be transferred by him; that, contrary to the letter and spirit of said agreement, plaintiff has purported to sell his alleged option to one Eugene L. Ilenry, who has attempted and pretended to buy same; that such agreement between the parties is of no legal force and effect; that such an agreement between the parties constitutes in law a fraud against respondent’s rights, and is unenforceable; that the proposition that the said plaintiff, on the one hand, has sold, and the said Henry, on the other, has purchased the said option is one that has been openly acknowledged by both of them; that plaintiff is a person interposed without real interest, who has received, or will receive, from said Henry a fixed consideration as the purchase price of said option; that the said Henry is the real plaintiff herein, and that the judgment sought to be obtained herein will inure to his benefit, and not to the benefit of J. M. Kinberger; and after abandonment of the leased premises, on or about December 13, 191T, and removal from,Rapides parish by plaintiff, and the institution of this suit, the' said Henry has attempted to take possession of the premises, to lease the same, and otherwise has held himself out to the world as the owner of same, all without right on his part, and to the prejudice of the rights of this respondent.
The defendants Mrs. Drouet and Harry W. Allen in their joint answer allege the validity of the titles from Mrs. Drouet to Allen and from Allen to the Home Place Land Company, and that, having parted with their titles to the property involved, they are not involved in the outcome of this litigation.
[1 ] We find no testimony in the record to sustain the contention of the defendant the Home Place Land Company that plaintiff is a party interposed,' and is without interest to prosecute this suit. The testimony, on the contrary, clearly shows that Henry was a mere agent of plaintiff, and in offering the property in dispute for sale he was to receive a commission. It further shows that Henry stated to a prospective buyer that plaintiff had only an option on this property, and that it would be necessary first to have the property conveyed to plaintiff, and then transferred by him to the purchaser.
[2] The contention of the defendant Home Place Land Company that the option to purchase granted by Mrs. Drouet to plaintiff is a nudum pactum, because without mutuality or consideration, would have merit, if such stipulation stood alone; but, as it is a part of the contract of lease, it cannot be dissev *993 ered therefrom and treated as an independent agreement. A lease with the affirmative covenants of the lessee is a sufficient consideration for. a contract giving the lessee a right to purchase the property during the continuance of the lease, so that the option cannot be withdrawn by the lessor during that time. Murphy v. Hussey, 117 Ha. 390, 41 South. 692.
[3,4] The defendant the Home Place Land Company also contends that a tender to it is a condition precedent to the institution of an action for specific performance, and alleges that no tender has been made or attempted to be made, prior to the institution of this suit by plaintiff. In Anse La Butte Oil & Mineral Co. v. Babb, 122 La. 415, 47 South. 754, which was an action to enforce a contract to sell, the court held:
“Plaintiff does not have to do more than to offer to perform the contract.”
The Supreme Court held in Stafford v. Richard, 121 La. 76, 46 South. 107:
“Where the plaintiff is ready, able, and willing to pay the price, he has a ground for action for specific performance of a contract to sell, although he fails even to allege tender.”
In the ease of Sewell v. Willcox, 5 Rob. 83, it was held that the offer to pay the price is sufficient in a suit by the vendee to annul the contract to purchase.
Mrs. Drouet is the only defendant who could have demanded an actual tender, even if such tender had been necessary, as plaintiff had no contractual relation, except with her. The right to specific performance in this case, if plaintiff has any such right, arises solely from the contract of lease and option between xfiaintiff and Mrs. Drouet, which was duly recorded long prior to the sale by her to>Allen, and by him to defendant company. Unless plaintiff had in some way abandoned, forfeited, or exhausted his option, prior to such sales they are to be regarded as of no effect, as far as plaintiff’s option is concerned. In fact, if plaintiff’s option was in full force when these subsequent sales were made, they are illegal, null, and void. Lehman v. Rice, 118 La. 975, 43 South. 639; Whited & Wheless v. Calhoun et al., 122 La. 100, 47 South. 415.
The plaintiff offered to tender the i>urchase price to Mrs. Drouet, but she declined to accept any tender, if made, and therefore a tender to her became unnecessary. Cotton v. Jennings Irrigation Co., 108 La. 4, 32 South. 193; Hennen’s Digest, p. 1021, under the head of Obligations, 7, (a) and (b); Camors & Co. v. Madden, 36 La. Ann. 425.
[ 5] The serious issue in this case is whether or not the xfiaintiff has forfeited and abandoned his right to purchase this property. Defendant the Home Place Land Company alleges that plaintiff has done so—
“by his refusal to accept title at a time when he requested same be made him, and later by his verbal declarations and notice to respondent and others that he had waived and abandoned and would not exercise same, and also by his removal from the property and abandonment of possession thereof.”
We find in the record an unexecuted act of sale from Harry W. Allen to Mrs. Mary New-big Kinberger, the sistcr-in-law of James M. Kinberger, plaintiff in this case. This unexecuted act of sale is of date March 15, 1915, and is signed by Harry W. Allen, but not by Mrs. Mary Newbig Kinberger.
The contract of lease of date June 20, 1915, describes the leased premises, as:
“175 acres, being a part of the Home Place plantation and known as all of the.Ben Eield of said xfiantation, except the plantation quarters located thereon, and throe cuts of land known as number one, four and twelve, according to the Sylvester Plantation map of said plantation.”
Excluding the xfiantation quarters, containing 9.90 acres, and cut 1 (10.50 acres), cut 4 (9.08 acres), and cut 12 (14.68 acres), we would, have 168.70 acres, excluding “the island,” containing 4 or 5 acres-, and 172.70 or 173.70 acres *995 including it. The Ben Field, therefore, included “the island” as a part of the lease, as the 175 acres declared to be in this tract would amount to only 168.70 acres without “the island,” and would fall short several acres, with “the island” included, of 175 acres.
The option contained in the lease covered the Ben Field tract of 172.70 or 173.70 acres, and, in addition to this, that part of the Ben Field described in the Sylvester Plantation map as cuts Nos. 1, 4, and 12, or 34.26 acres additional, or a total acreage of 206.96 or 207.97 acres.
The unexecuted deed from Allen to Mrs. Mary Newbig Kinberger, excluded “the island,” containing 4 or 5 acres, and which was included in the option to buy, granted in said lease to J. SI. Kinberger by Mrs. Drouet, and it included 113.70 acres, more, or less, of that part of the Home. Place plantation known as the Back Bayou field, which was not included in the option to buy at all.
Tlie consideration in the unexecuted deed from Allen to Mrs. Mary Newbig Kinberger is stated to be the price and sum of $11,000, of which the sum of $3,000 is' cash in hand paid, and the remainder payable in seven equal installments of $1,142.85, maturing annually after the date of the acceptance of this act, represented by seven promissory notes of the purchaser for the amounts stated, bearing 6 per cent, per annum interest, payable annually, and secured by vendor’s lien and special mortgage to be executed by the purchaser at the time of the acceptance of the act upon the property conveyed.
The 317 acres in this unexecuted act of sale were to be sold at $11,000, or about $34 per acre. The option of the plaintiff, James M. Kinberger, was to be exercised at $50 per acre on a total acreage of 206 or 207 acres, i. e., $10,300 to $10,350 for the purchase price, payable in cash, at the time of the execution of the deed, or at least one-fourth of the total consideration, or about $2,500 cash; and the balance to be paid in annual installments extending over a period of not over three years after date of the sale; notes to bear 8 per cent, interest from date, and to be secured by vendor’s lien and special mortgage upon the property purchased by him.
How the unexecuted deed tendered by Allen to Mrs. Kinberger, the sister-in-law of the plaintiff, can he tortured into a deed tendered to the plaintiff in his execution of his option to buy is inconceivable. The lands are different; the consideration is different; the cash payment is different; the rate of interest is different; the deferred payments are different. How plaintiff can be held to be estopped, or to have forfeited or abandoned his option to buy the property described in the contract of lease upon which he had an option, because he acted as the agent of his sister-in-law in this transaction, we fail to see. Even if plaintiff had agreed to join his sister-in-law in this transaction, he could have repudiated the same and lawfully refused to sign this deed, for the plain reason that the deed excluded from the property “the island,” a part of the Ben Field tract, covered by plaintiff’s option.
[6] We have not been impressed by the testimony of the agent of the Home Place Land Company as to the statement made by him that he had heard plaintiff say on five different occasions, beginning in 1914 and extending into the fall of 1917, that he was not going to buy this property, and that he was going to move away. Plaintiff contradicts the testimony of this witness, and the record in this ease proves that on the 18th day of September, 1917, plaintiff notified Mrs. Drouet in writing that he desired to execute said option and purchase said property at the price of $50 per acre, payable in cash, and that on the 2Gth day of November, 1917, the plaintiff, by act executed before a notary public and two witnesses, and filed for record in the parish of Rapides, on the 27th day of November, *997 1917, did accept said option and promise of sale for said price of $50 per acre, payable in cash.
[7] On December 12, 1917, the Home Place Land Company, defendant herein, notified the plaintiff to vacate and move oil the Ben Field place, “which property was occupied by you under the terms and provisions of a certain lease dated January 20. 1913, and terminating December 31, 1917.” It is therefore not at all remarkable that plaintiff left this place in December and went to Plaquemine to live, as his lease was .at an, end December 31, 1917, and he had received a legal notice to-vacate the premises. This could not be seriously considered a voluntary abandonment of the property and of its possession, and a forfeiture of option of plaintiff to purchase this property, especially in the face of his recorded acceptance of the option to buy. this land of date November 26, 1917, and his prior demand for the execution of his option made on Mrs. Drouet on the 18th day of September, 1917. If plaintiff at any time ever intended to abandon this property, and not to buy it, he changed his mind. I-Ie had a light to accept or reject this option until December' 31, 1917. Under the terms of the contract of lease and option all of the improvements placed upon the property by the plaintiff as lessee were to become the property of Mrs. Drouet, the lessor, at the termination of the lease, in the event plaintiff failed to exercise his option to buy. Kinberger details these improvements in his testimony, and estimates their value at about $4,500. His abandonment of his option to buy would have resulted in a loss to him of at least this sum, and it is therefore clear that he would not have abandoned his option, without consideration of some kind.
It is not pretended that plaintiff has ever received any valuable consideration for withdrawing from his option. At the time this property was conveyed by Mrs. Drouet to Allen, January 14, 1915, the testimony shows that Frank Drouet, the husband of Mrs. E. M. Drouet, had an agreement with Allen and the plaintiff that he should be permitted to exercise his option after this sale, but this was prevented by Allen’s exclusion from the deed to Mrs. Kinberger of “the island,” a part of the property included in the option held by plaintiff. It is a remarkable fact that, if plaintiff had stated to agent of the defendant company in 1914 and 1915 that he did not wish to buy this property, such an arrangement should have been made between Drouet, Allen, and the plaintiff, whose actions have contradicted upon those various occasions the verbal statements which he is alleged to have made in reference to tbis property.
We, therefore, conclude that testimony in this case fails to prove that plaintiff has forfeited or abandoned his option to buy this property.
[8] As the option of plaintiff to buy this property was of record in Rapides parish long prior to the sale of Mrs. Drouet to Allen, and by him to defendant company, and, as Mr. Frank G. Drouet, the husband of Eleanor M. Drouet, and Allen failed to comply with their agreement to allow plaintiff to redeem this property, the option to buy remained unimpaired, intact, and in full force and effect. The sale by Mrs. Drouet to Allen and the sale by him to defendant company, in the face of the recorded option of plaintiff, were illegal, null, and void. Whited & Wheless v. Calhoun, 122 La. 100, 47 South. 415; Lehman v. Rice, 118 La. 975, 43 South. 639; Barfield v. Saunders, 116 La. 136, 40 South. 593; Collins v. Desmaret, 45 La. Ann. 111, 12 South. 121; Thomson v. Mylne, 11 Rob. 349; Barrett v. His Creditors, 12 Rob. 478.
This option was expressly accepted by plaintiff by authentic act, duly recorded in the parish of Rapides on November 26, 1917, *999 or over 30 days before the term fixed for its expiration, December 31, 1917.
[9] A promise of sale amounts to a sale in the sense that it gives the purchaser the right to demand a specific performance of the obligation to transfer and deliver the property.
[10] A promise of sale, duly accepted and recorded, confers a real right on the purchaser, of which third persons are bound to take notice, and such right cannot be defeated by a subsequent sale of the same property recorded prior to the execution of the deed pursuant to the promise, of sale. Lehman v. Rice, 118 La. 975, 43 South. 639.
One may purchase the right, or option, to accept or reject, within a stipulated time, an offer or promise to sell. After the purchase of such option, for value, such offer or promise cannot be withdrawn before' the time agreed upon, and should it be accepted within the time stipulated. The contract, or agreement, to sell, evidenced by such promise and acceptance, may be specifically enforced by either party.
Article 2462, R. C. O., as amended by Act 249 of 1910.
[11] The balance due, if any, on the mortgage granted by Mrs. Drouet in favor of the Alliance Trust Company on this property, and .recorded in the office of the recorder of Rapides parish on April 30,1912, in Mortgage Rook TT, p. 620, should be deducted from the price due by plaintiff. Murphy et al. v. Hussey, 117 La. 390, 41 South. 692.
[12] If the plaintiff has the right to the title, it will he so decreed, and defendant Mrs. Drouet will be condemned to sign the deed. If she refuses to sign, then the decree will be the title. Barfield v. Saunders, 116 La. 136, 40 South. 593; Murphy et al. v. Hussey, 117 La. 390, 41 South. 692.
The judgment of the lower court rejected the démand of plaintiff, and, in our opinion, is erroneous, for the reasons assigned herein.
On November 26, 1917, the plaintiff duly accepted the option in his favor covering this land, at $50 per acre cash. This acceptance, which is by notarial act, was duly recorded November 27, 1917, in Conveyance Book 82, folio 447, of the records of Rapides parish, La.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that the option of the plaintiff, James M. Kinberger, to purchase the property described in the contract of lease and option of date January 20, 1913, be, and 'the same is hereby, recognized as existing and in full force and effect, and the right of the plaintiff, James M. Kinberger, to enforce said option against Mrs. Elean- or M. Drouet, defendant, by specific performance is hereby confirmed. It is therefore ordered, adjudged, and decreed, as plaintiff, James M. Kinberger, has accepted said option at $50 por acre under said contract of lease and option of date January 20, 1913, that, within 10 days from the date of registry of this decree in the lower court Mrs. Eleanor M. Drouet, defendant, execute and deliver to plaintiff, James M. Kinberger, a warranty deed, for the consideration of $50 cash per acre, to the land described in said contract of lease entered into between the said parties on July 20, 1913, and covered by plaintiff’s option, upon a tender to her of the cash purchase price of $50 per acre for said land bj' plaintiff, and, upon her failure, or refusal to accept said tender, and to execute and deliver said deed to the plaintiff, James M. Kinberger, within said delay, then it is ordered that this decree shall stand as a title translative of said property covered by said option to the said-James M. Kinberger, plaintiff herein; and that there shall be deducted from said cash purchase price whatever sum may be necessary to clear the property con *1001 veyed of incumbrances, including cost of certificate.
It is further ordered, adjudged, and decreed that the sale from Mrs. Eleanor M. Drouet to Harry W. Allen, codefendant herein, of date January 14, 1915, and recorded January. 15, 1915, in Conveyance Book 69, p. 134, of the office of the recorder of Rapides parish, La., be, and the same is hereby, declared illegal, null, and void and of no effect, and the inscription thereof be canceled on the records of said parish in so far as said sale affects the property involved in this suit, .and subject to said option.
It is further ordered, adjudged, and decreed that the sale from Harry W. Allen, co-defendant, to the Home Place Land Company, codefendant herein, of date May 12, 1916, and recorded May 23, 1916, in Conveyance Book 73, p. 565, of the office of the recorder ■of Bapides parish, La., be, and the same is hereby, decreed to be illegal, null, and void and of no effect, and that the inscription thereof be canceled on the records of said parish, in so far as the said sale affects the property involved in this suit and subject to said option; appellees to pay costs of appeal and óf the lower court.
OVERTON, J., recused.